IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PIZZA HUT, INC.,                          §
                                          §
         Plaintiff,                       §
                                          §
v.                                        §          Civil Action No. 3:11-CV-0011-N
                                          §
LUNDY ENTERPRISES, LLC, *et al.*,         §
                                          §
         Defendants.                      §

## ORDER

This Order addresses Plaintiff Pizza Hut, Inc's ("Pizza Hut") motion for summary

judgment on counts one and two of Defendant Lundy Enterprises, LLC, Marilyn Lundy, and

Larry Lundy's (collectively, the "Lundy Parties") first amended counterclaim [61], the Lundy

Parties' motion for partial summary judgment on count three of the Lundy Parties' first

amended counterclaim [67], and Pizza Hut's motion to exclude the testimony of Citran

Cooperman [64].  For the reasons stated below, the Court grants in part and denies in part

Pizza Hut's motion for summary judgment, denies the Lundy Parties' motion for summary

judgment, and denies Pizza Hut's motion to exclude.

### I. THE PARTIES' CONTRACT DISPUTE

Lundy Enterprises is a former franchisee of more than 40 Pizza Hut restaurants in

New Orleans and Baton Rouge, Louisiana.  Marilyn and Larry Lundy are both guarantors of

Lundy Enterprise's obligations to Pizza Hut.

As a result of Hurricane Katrina, and for a host other reasons, Lundy Enterprise's restaurants were in financial trouble. In 2009, Pizza Hut threatened to terminate the Lundy Enterprise's three franchise agreements and purchase Lundy Enterprise's assets. However, Pizza Hut valued the assets at only $2,000,000. The parties mediated the dispute in 2010. Although the parties did not agree on the value of the Lundy Enterprise's assets, the parties nevertheless entered into an agreement, providing among other things that the parties would participate in an arbitration hearing to determine the fair market value of the Lundy network (the "Settlement Agreement").

The Settlement Agreement also contemplated that the parties would enter into a series of other agreements. One of those agreements was the Asset Purchase Agreement ("APA"), which provided that Pizza Hut would purchase the Lundy Enterprise assets for the value determined by the arbitrator. The Settlement Agreement also contemplated an agreement between Pizza Hut and Larry and Marilyn Lundy, compensating the Lundys for acting as "ambassadors" of the Pizza Hut brand in Baton Rouge and New Orleans (the "Ambassador Agreement"). The parties entered into and executed both the APA and the Ambassador Agreement.

In addition to contemplating arbitration, the Settlement Agreement also provided that Pizza Hut would provide "commercially reasonable efforts to assist Lundy to satisfy any

encumbrance on the assets through the use of the sale proceeds, not to continue beyond 14

days."[1]  Settlement Agreement ¶ 24.  This provision was also reflected in the APA:

> [Pizza Hut] agrees, for a period not to exceed fourteen (14) days from the date
> the Asset Value is determined, to use commercially reasonable efforts to assist
> [Lundy Enterprises'] negotiations with the creditors holding any such claims,
> liens, and encumbrances ("the Negotiation Period").  If [Lundy Enterprises]
> is able to reduce the amount of such claims, liens and encumbrances to a total
> amount that is less than the Asset Value within such fourteen (14) day period,
> Closing shall be held under this Agreement on the first business day following
> the Negotiation Period.

APA ¶ 7.1.

The arbitration contemplated by the Settlement Agreement and the APA occurred on

December 17 and 18, 2010.  As a result of that arbitration, the arbitrators entered an award

of $7,742,550.  This award was less than the amount of the liens and encumbrances, which

the Lundy Parties estimated as approximately $12,000,000.  Thus, the arbitration award

triggered the 14-day negotiation period.  The Lundy Parties apparently requested extensions

with Pizza Hut a number of times, but Pizza Hut refused those requests.  The Lundy Parties

failed to reduce the liens to an amount below the arbitration award – at least in part as a result

of the Christmas holidays.  Because the Lundy Parties failed to comply with the APA by

failing to clear the liens, Pizza Hut terminated the agreement, as the agreement expressly

granted it the authority to do.

After termination, Pizza Hut filed suit based on trademark infringement and breach

of contract, alleging that Lundy Enterprises continued to operate its restaurants as Pizza Hut

---

[1]It is unclear whether the Settlement Agreement referred to Lundy Enterprises only,
or all Lundy Parties.

restaurants without authority.  The Lundy Parties filed counterclaims based on of both the Settlement Agreement and the APA, breach of good faith and fair dealing with respect to the Settlement Agreement, and tortious interference with business contracts and prospective economic advantage.   This Court previously dismissed the Lundy Parties' tortious interference claim.  The Lundy Parties filed an amended counterclaim, adding a breach of contract counterclaim arising out of Pizza Hut's alleged breach of the Ambassador Agreement. Pizza Hut moves for summary judgment on the Lundy Parties' breach of contract claims arising out of the Settlement Agreement and the APA.  The Lundy Parties move for summary judgment on their counterclaim for breach of the Ambassador Agreement.

## II.  SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Courts, however, need not sift through the record in search of triable issues.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return

a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, courts resolve factual controversies in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS PIZZA HUT'S MOTION IN PART, AND DENIES IT IN PART

#### A. The Lundy Parties' Breach of Contract Claims

As noted in this Court's previous Order, *see* Order of Sept. 19, 2011 [32], Louisiana law applies to this contract dispute. Under Louisiana law, "[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So.3d 1099, 1108-09 (La. Ct. App. 4th Cir. 2011). The Lundy Parties base their breach of contract claim on four separate alleged breaches: (1) Pizza Hut breached its promise to mediate; (2) Pizza Hut breached the APA's confidentiality provision; (3) Pizza Hut breached the Settlement Agreement's nondisparagement clause; and (4) Pizza Hut failed to use commercially reasonably efforts to assist the Lundy Parties in clearing the tax liens.

**1. *The Lundy Parties Fail to Raise an Issue of Material Fact Regarding Breach of the Mediation Agreement.*** – The Settlement Agreement unequivocally states that, in the event of a dispute, the parties must mediate their dispute. Settlement Agreement ¶ 25 ("In the event a dispute arises under this agreement, the parties will mediate."). The parties do not dispute that no mediation took place. Nevertheless, Pizza Hut argues that the Lundy Parties fail to raise a fact issue on this claim because they cannot show damages as a result of this breach. The Court agrees.

In any breach of contract action, the damages accrued must occur as a result of the breach of contract. *See Favrot*, 68 So. 3d at 1109 (providing that breach of contract requires that "the failure to perform resulted in damages to the obligee"). Here, the only possible damages for a failure to mediate would be a failure to settle. Yet, mediation does not always result in settlement. And the Lundy Parties offer no evidence tending to show that mediation would have produced a settlement. Further, the Lundy Parties fail to cite any authority providing for the viability of their failure-to-mediate cause of action. On this record, the Court agrees with those courts holding that a failure-to-mediate claim generally fails to show damages caused as a result of the breach. *See, e.g.*, *Ervin v. Nashville Peace and Justice Ctr.*, 673 F. Supp. 2d 592, 612-13 (M.D. Tenn. 2009); *Solomon v. Progressive Cas. Ins. Co.*, 685 A.2d 1073, 1074-75 (R.I. 1996) (holding that party may not sustain a cause of action for compensatory or punitive damages arising out of failure to mediate or arbitrate); *Jones v. Garber*, 51 Va. Cir. 512 (Va. Cir. Ct. 2000) ("Although the contract in this case does require mediation before litigation, there is no true remedy for a failure to mediate."); *see also DKH*

ORDER – PAGE 6

*Homes, LP v. Kilgo*, No. 03-10-656-CV, 2011 WL 1811435, at *4 (Tex. App. – Austin May 11, 2011) ("That the parties would have reached an agreement is mediation is pure speculation, and any testimony to the effect that the failure to mediate necessarily caused [Plaintiff] to incur attorney's fees for filing suit is too speculative to constitute relevant or probative evidence."). Accordingly, to the extent the Lundy Parties' breach of contract claim is based on breach of the mediation agreement, the Court grants Pizza Hut's motion for summary judgment.

### 2. *The Lundy Parties Raise a Fact Issue Regarding Breach of the Confidentiality*

*Agreement.* – The APA's confidentiality provision provides as follows:

> This Agreement, the terms of the transactions contemplated by this Agreement, and any other information heretofore or hereafter disclosed or obtained in connection with this Agreement concerning the business, operations, affairs, or financial condition of any party hereto (collectively the "confidential information"), will be kept confidential, except as otherwise required by law or legal process and except to the extent . . . (ii) the confidential information is or hereafter becomes lawfully obtainable from other sources . . . . Seller may disclose the contents of this Agreement as reasonably necessary to secure the agreement of lessors, creditors or taxing authorities . . . .

APA ¶ 8.7. This provision was intended to survive the APA's termination. *See id.*

After terminating the APA, Pizza Hut authored a press release. The release stated: "In past years, the Company's franchisee for the two markets had operated Pizza Hut restaurants in New Orleans and Baton Rouge. The owner was unable to meet serious financial obligations to federal, state, and local taxing authorities – as well as other corporate obligations left unpaid. As a result, these franchised Pizza Hut restaurants in the two markets have closed and will not reopen." Pizza Hut does not dispute that it issued this release. But

ORDER – PAGE 7

Pizza Hut argues that even if this information was confidential, it was "lawfully obtainable" under the agreement because the recorded tax liens and the unpaid corporate obligations were both lawfully obtainable information.  The Court disagrees.

In its motion, Pizza Hut offers no evidence to show Lundy Enterprise's tax debts or any information regarding those debts was lawfully obtainable.  Pizza Hut's only evidence is the Lundy Parties' interrogatory admission "that the total amount of liens and encumbrances on the assets of [Lundy Enterprises] as of December 18, 2010 was approximately $12,000,000."  App. Supp. Pl.'s Mot. Summ. J. 53.  But this evidence does not show that information regarding financial obligations to "federal, state, and local tax taxing authorities" was lawfully obtainable.  For one, not all liens and encumbrances are tax liens.  Thus, the Lundy Parties' admission regarding the amount of liens and encumbrances does not necessarily show that the Lundy Parties failed to pay financial obligations to taxing authorities.  Further, not all liens are publicly recorded.  *See generally, e.g.*, TEX. PROPERTY CODE § 54.001, *et seq.* (providing that Landlord's lien is effective without recording).  Thus, Pizza Hut fails to show that any particular liens were publicly available.[2]  Because Pizza Hut

---

[2]The Lundy Parties point to evidence in Pizza Hut's appendix regarding the status of some particular liens.  This evidence, an appendix attached to the Settlement Agreement showing the place of filing for a number of liens on Lundy Enterprise's assets, might have discharged Pizza Hut's summary judgment burden if pointed to by Pizza Hut.  But Pizza Hut did not mention this evidence until its reply.  Thus, the Court declines to consider the evidence.  *Mannatech, Inc v. Glycobiotics Intern., Inc.*, No. 3-06-CV-0471-BD, 2008 WL 918311, at *2 n.2 (N.D. Tex. March 13, 2008) (declining to consider new argument made in reply brief).  The Court reaches this conclusion even though the evidence was attached to the appendix in support of Pizza Hut's original motion because "[judges need not sift through the record" to find evidence meeting Pizza Hut's initial summary judgment burden.  *Adams*, 465 F.3d at 164.

failed to show that the Lundy Parties liens were tax liens, and because Pizza Hut failed to show the liens were publicly recorded, Pizza Hut failed to discharge its summary judgment burden. Accordingly, the Court denies Pizza Hut's motion to the extent that the Lundy Parties' breach of contract claim arises out of a breach of the confidentiality provision.

*3. **The Lundy Parties Raise a Fact Issue Regarding Breach of the Disparagement Provision** –* The Settlement Agreement contains a clause obligating the parties to engage in "mutual non-disparagement between [themselves] and to others." Settlement Agreement ¶ 12. The Lundy Parties argue that Pizza Hut's press release breaches this provision as well. Although the term "disparagement" is undefined, Black's Law Dictionary defines the word "disparage" multiple ways. Black's defines the word, among other things, as a "derogatory comparison of one thing with another," "the act or an instance of castigating or detracting from the reputation of, esp. unfairly or untruthfully," or "[a] false and injurious statement that discredits or detracts from the reputation of another's character, property, product, or business." BLACK'S LAW DICTIONARY (9th ed. 2009). Another dictionary, on the other hand, defines disparage as either "to speak of or treat slightingly" or otherwise "to bring reproach or discredit upon; lower the estimation of." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 567 (2d Ed. 2001).

The Lundy Parties assert that Pizza Hut made public statements regarding an alliance with the National Urban League "to help find jobs for the hundreds of former workers who were out of a job with the sudden and unexpected closure of Lundy's forty-four stores." The Lundy Parties also point to the previously discussed press release regarding Lundy

Enterprise's tax and corporate debts.  Finally the Lundy Parties claim that Pizza Hut's assertion that it will "establish state of the art restaurants to service the community" implied that the Lundy Parties' restaurants were not state of the art.

Pizza Hut does not dispute making and releasing these statements.  Rather, it argues that none of the statements are disparaging under the agreement because Pizza Hut did not make a derogatory comparison between itself and the Lundy Parties.  Pizza Hut also argues that its comments were truthful and that truthful comments are not disparaging under the settlement agreement.

Although recognizing the import of Pizza Hut's arguments under certain definitions of "disparage," the Court holds that the term is ambiguous.  As noted, there are a number of possible definitions for the term.  Some definitions require a comparison, some do not.  Some definitions seem to require that the statement be false, others do not.  On reading the settlement agreement as a whole, the Court cannot determine which definition the parties intended to control.  And under some definitions of the word, the Lundy Parties' evidence raises an issue of material fact.  For example, releasing statements to the press informing the public at large that the Lundy Parties failed to pay their bills might "bring reproach or discredit upon" the Lundy Parties.  A jury might also consider the circumstances surrounding the release – published the day after the fourteen-day period expired –"unfair," even if truthful.

The Settlement Agreement provides no indication that the parties meant disparagement in a legal sense.  This is thus unlike the situations in Pizza Hut's cited cases.

ORDER – PAGE 10

*See Lamar Advertising Co. v. Continental Cas. Co.*, 394 F.3d 654, 664 (5th Cir. 2005) (applying legal definition of disparagement where insurance policy required insurer to pay damages as damages from personal injury); *QBE Specialty Ins. v. Better Waste Disposal LLC*, No. 11-757, 2011 WL 5238487, at*5 (W.D. La. Nov. 1, 2011). Accordingly, the Court cannot determine whether the Settlement Agreement's term refers to only false statements or to only comparative statements. Because the contractual term is ambiguous, and because under some definitions the Lundy Parties' evidence raises an issue of material fact regarding breach of the nondisaparagement provisions, the Court denies Pizza Hut's motion for summary judgment regarding the Lundy Parties' claims arising out of Pizza Hut's alleged breach of the nondisparagement provision.

   ***4.   The Lundy Parties Raise a Fact Issue Regarding Pizza Hut's Breach of the "Commercially Reasonable Efforts" Provision.*** – The Settlement Agreement provides that "prior to the election of rescission, [Pizza Hut] agrees to use commercially reasonable efforts to assist Lundy Enterprises to satisfy any encumbrance on the assets through the use of the sale proceeds, not to continue beyond 14 days." Settlement Agreement ¶ 24 (emphasis added). The APA similarly provides that Pizza Hut "agrees, for a period not to exceed 14 days from the date the Asset Value is determined, to use commercially reasonable efforts to assist [Lundy Enterprises] in [its] negotiations with the creditors holding any such lien claims or encumbrances."[3]

---

   [3]The Court notes that these provisions are not identical. Most notably, in the Settlement Agreement, Pizza Hut agrees to use commercially reasonable efforts "through the use of sale proceeds." Settlement Agreement ¶ 24. The APA does not contain such a

ORDER – PAGE 11

The Lundy Parties argue that Pizza Hut breached this agreement because "the people charged with helping Lundy did nothing during the Negotiation Period and knew that Lundy would struggle to clear the liens during the Christmas and New Year's holidays."  Def.'s Resp. to Pl.'s Mot. Summ. J. 13.  Under the Lundy Parties' interpretation of the provision, Pizza Hut failed to "affirmatively us[e] commercially reasonable efforts" and instead "sat idly by and chose to wait and see what the Lundy Parties could accomplish on their own." *Id.* at 14.  As support for its claim of breach of this provision, the Lundy Parties offer evidence indicating that (1) Pizza Hut discussed what the Lundy Parties should do internally, but never relayed these discussions to the Lundy parties; (2) the Lundy Parties had a subjective belief that the parties would be "side by side in the 'trenches' working with the taxing authorities to reduce the liens and encumbrances;" and that (3) it was impossible for Lundy and his representative, without the required support from Pizza Hut, to clear the liens within the time period.  *Id.* at 15.  Further, the Lundy Parties' offer evidence that Pizza Hut spoke to Larry Lundy two times, at most, during the 14-day period, and never affirmatively offered assistance or suggestions.  *See, e.g.*, Millen Depo. 131:13-134:22, *in* App. Supp. Def.'s Resp. Pl.'s Mot. Summ. J. 187-190.

Based on the plain meaning of "commercially reasonable efforts," encompassed in both the Settlement Agreement and the APA, the Lundy Parties raise a fact issue.  The Lundy Parties offer evidence showing that Pizza Hut failed to make *any* effort.  A total lack of effort

---

limitation.  Thus, for purposes of this motion, the Court need not consider the possible effect of the limiting language in the Settlement Agreement.

to clear the liens is not a commercially reasonable effort to do so. Thus, the Lundy Parties raise an issue of material fact regarding breach of the commercially reasonable efforts provisions of the APA and the Settlement Agreement. Accordingly, the Court denies Pizza Hut's motion for summary judgment regarding the Lundy Parties' claims arising out of Pizza Hut's alleged breach of the commercially reasonable efforts provisions.

### B. The Lundy Parties' Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

#### 1. The Lundy Parties Raise a Fact Issue on Their Good Faith and Fair Dealing Claim Arising out of the Commercially Reasonable Efforts Provision. – "As a general rule, Louisiana recognizes an implied covenant of good faith and fair dealing in every contract." *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citing *Brill v. Catfish Shaks of Am.*, 727 F. Supp. 1035, 1039 (E.D. La. 1989)). Louisiana "measure[s] [good faith not] by a higher objective standard, but by a subjective standard. A mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach of good faith [under Louisiana law]." *Brill*, 727 F. Supp. at 1041.

Whether a plaintiff may bring a cause of action for breach of good faith where the defendant was not actually in breach of contract appears somewhat unsettled. Some Louisiana courts hold that a breach of good faith and fair dealing is only actionable when a breach of a particular obligation occurs. *See Favrot v. Favrot*, 68 So. 3d 1099, 1110 (La. Ct. App. 4th Cir. 2011) ("[J]udicial determination of good-faith . . . failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of contract.") Others, however, treat the question of breach and the question of

good faith exercise of a contractual rights as different questions. *See N-Y Assocs. v. Bd. of Comm'rs*, 926 So. 2d 20, 24 (La. Ct. App. 4th Cir. 2006). The determination of whether a party to a contract acted in bad faith is a factual determination. *See id.* (citing *Weeks v. T.L. James & Coe*, 417 So. 2d 420, 425 (La. Ct. App. 3d Cir. 1993).

        This Court previously cited *N-Y Associates* as present Louisiana law on the issue. Although Pizza Hut continues to argue that a breach of contract is necessary, it does not distinguish *N-Y Associates*. And Pizza Hut's cited cases are inconsistent with *N-Y Associates* and other Louisiana cases. *See, e.g.*, *Tetra Tech., Inc. v. La. Fruit Co.*, No. 09-7491, 2010 WL 3923089, at *4 (E.D. La. Sept. 30, 2010) (holding that the contract allowed defendant to withhold consent, but noting the consent must be withheld in good faith). Louisiana courts also routinely say that "[t]he implied obligation to execute a contract in good faith usually modifies the express terms of the contract and should not be used to override or contradict them." *Clark*, 110 F.3d at 297. If the good-faith-and-fair-dealing covenant can modify express terms of a contract, it must apply in at least some situations where a breach is not otherwise present.

        This Court has already held that Pizza Hut did not breach the Settlement Agreement in refusing to extend the negotiation period. But as previously noted, Louisiana law mandates that "[g]ood faith shall govern the conduct of the obligor and the obligee in *whatever* pertains to the obligation." LA. CIV. CODE art. 1759 (emphasis added). The Louisiana Civil Code lacks a definition for "good faith," but the Fifth Circuit has interpreted the concept, "'as understood in modern [Louisiana] law,'" as that which

ORDER – PAGE 14

binds the parties to a contract to cooperate with each other in order to attain the mutual end for which they entered into the agreement. In that perspective, an obligee who, without justification, prevents the obligor's performance, or conceals from the obligor facts that, to the obligee's knowledge, would cause the obligor to fail to perform, or even facts that would make the latter's performance exceedingly difficult, thereby refuses the cooperation he owes the obligor . . . .

*Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 398 (5th Cir. 2006) (quoting 6 Saul Litvinoff, LOUISIANA CIVIL LAW TREATISE PART II § 5.32 (2d ed. 2001)) (ellipsis in original).  Pizza Hut does not dispute this characterization.

The Lundy Parties offer various facts to indicate that Pizza Hut approached their "commercially reasonable" efforts provision in bad faith.  The Lundy Parties offer evidence that Pizza Hut had typically offered the Lundy Parties extensions in the past.  Yet, when the 14-day period began to run, Pizza Hut refused to grant any extension, even while knowing that it would be extremely difficult to negotiate with federal, state, and local agencies during the holiday season.  Further, the parties do not dispute that the arbitration was not originally scheduled for December 18.  Thus, under the original schedule, the 14-day period would not have run over the holidays.  Further, Pizza's Hut press report, issued the day after the negotiation period expired, could also tend to show a reasonable juror that Pizza Hut was not exercising commercially reasonable efforts to accomplish the Settlement Agreement's purpose of clearing the liens: Pizza Hut was instead preparing to rescind the APA at the first possible moment.  Based on these facts taken as a whole, and reasonable inferences drawn therefrom, the Court holds that there are issues of material fact regarding the Pizza Hut's

breach of the commercially-reasonable-efforts provision.[4]  Thus, the Court denies Pizza Hut's motion as to this claim.

**2.  *The Lundy Parties' Breach of Good Faith Claim Regarding Arbitration Evidence Is an Impermissible Collateral Attack.*** –  The Lundy Parties also assert that Pizza Hut breached the implied covenant of good faith and fair dealing by introducing certain evidence in the arbitration proceeding that the Settlement Agreement specifically prohibited. The Settlement Agreement provides that "the old expert reports are not admissible in the [arbitration] hearing and will be considered as part of the settlement process and confidential."  Settlement Agreement ¶ 5.  However, "where a party files a complaint in federal court seeking damages for an alleged wrongdoing that compromised an arbitration award and caused the party injury, it 'is no more in substance, than an impermissible collateral attack on the award itself.'" *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 909 (citing *Corey v. N.Y.S.E.*, 691 F.2d 1205, 1212 (6th Cir. 1982)).  Thus, to the extent that the Lundy Parties argues to this Court that Pizza Hut breached the Settlement Agreement by introducing such evidence in the arbitration proceeding, such a claim is an impermissible collateral attack on that arbitration proceeding.

---

[4]Pizza Hut also argues that it did not have discretion to extend the Negotiation Period. This Court has already rejected this argument.  Order of Sept. 19, 2011 [32] ("Although [the Settlement Agreement] obligated Pizza Hut to help Lundy for a fourteen-day period, it did not expressly forbid Pizza Hut from affording Lundy a longer Negotiation Period if doing so would have constituted a commercially reasonable effort to accomplish the Settlement Agreement's overarching purpose.")

The Lundy Parties seek to distinguish *Decker* by arguing that Pizza Hut's "misconduct is not limited to its action during the arbitration proceeding. Instead, [Pizza Hut]'s improper conduct during the Arbitration was not an isolated event, but instead was part of the company's ongoing, bad faith efforts to take back the Lundy Network at a fraction of its actual worth." Def.'s Resp. to Pl.'s Mot. Summ. J. 30. This argument fails for two reasons. First, the Lundy Parties plead bad faith breach *of the Settlement Agreement*. First Am. Answer 31. Thus, actions by Pizza Hut before the Settlement Agreement are not relevant. Further, the damages that flow from the attempted introduction of the impermissible evidence itself, even if specifically excluded, would only effect the *amount* of the arbitration award. Thus, the Lundy Parties' attempted argument is an impermissible collateral attack. *See Decker*, 205 F.3d at 909 (citing *Corey*, 691 F.2d at 1212).[5] Thus, to the extent that the Lundy Parties seek to recover based on breach of the Settlement Agreement by Pizza Hut's introduction of prohibited evidence, Pizza Hut is entitled to summary judgment on that claim.

### IV. THE LUNDY PARTIES ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT THREE OF THEIR FIRST AMENDED COUNTERCLAIM

The Ambassador Agreement provides that

The Ambassadors acknowledge and agree that, throughout the Term, they will not disparage the Pizza Hut brand, PHI, or PHI's employees, agents, or affiliates. Likewise, the Ambassadors will not take any action or make any statement during the Term that might subject the Pizza Hut brand, PHI, its employees, agents or affiliates to public scorn, ridicule or embarrassment. The

---

[5]The Court notes that evidence showing that Pizza Hut attempted to introduce clearly prohibited evidence in the arbitration proceeding, although insufficient to show a breach of the Settlement Agreement, might be relevant to show Pizza Hut's general "bad faith" state of mind arising out of the breach of the commercially reasonable efforts provision.

ORDER – PAGE 17

Ambassadors acknowledge and agree that any breach of this obligation will constitute a material breach under this Agreement and will relieve PHI of any obligation to make any *future* unpaid installments.

Ambassador Agreement ¶ 5, *in* App. Supp. Def.'s Mot. Summ. J. 80 (emphasis added). Pizza Hut argues that the Lundy Parties disparaged Pizza Hut in two separate press releases. On January 5, 2011, the Lundy Parties issued the following press release:

Despite serious efforts on the part of Lundy Enterprises to continue to operate Pizza Hut locations throughout the Louisiana market, due to an ongoing dispute with Pizza Hut, the stores will remain closed for the foreseeable future. We thank all of our customers for their loyal patronage and apologize for Pizza Hut's unfortunate decision to allow these stores to close for business. Lundy Enterprises will protect its rights to the fullest extent possible and is optimistic that the Pizza Hut stores will become operational again with the assistance of the judicial system.

App. Supp. Pl.'s Resp. Def.'s Mot. Summ. J. 106. The second press release, issued January 31, 2011, stated, among other things, that Pizza Hut was "reneging on an arbitration award that would have cost Pizza Hut millions of dollars in payments to Lundy." *Id.* at 108. Further, that "Pizza Hut has unfairly and improperly burden and hindered Lundy and Lundy Enterprises' success and profitability by imposing unfair credit terms, refusing to permit Lundy Enterprises to introduce product lines extensions such as *Wing Street* and improperly engaging in a calculated scheme to reclaim Lundy Enterprises' territory for itself." *Id.* The Lundy Parties also stated that the arbitrators "sided with Lundy," but that Pizza Hut unilaterally ended its agreement with the Lundy Parties. *Id.*

Based on any reasonable definition of the word "disparage," as discussed above, Pizza Hut has raised a material fact issue regarding breach of the Ambassador Agreement. Thus,

ORDER – PAGE 18

the Lundy Parties are not entitled to summary judgment based on the amount of the entire Ambassador Agreement.

But the Court's inquiry does not end there. The agreement states that it would relieve Pizza Hut only of any *future* unpaid payments. It is undisputed that Pizza Hut failed to pay the first $200,000 installment. That installment became due before the purported breach occurred. The Court holds that the plain language of the Ambassador agreement that the disparagement provision relieved only Pizza Hut's obligations to any future unpaid payments, not the unpaid payment that had already accrued. Thus, even though Pizza Hut raises a material fact issue regarding the Lundy Parties' breach of the Ambassador Agreement, it is undisputed that the first $200,000 installment was owed. The Lundy Parties' purported breach does not discharge Pizza Hut's burden to pay this first installment.

Nevertheless, Pizza Hut argues that the Franchise Agreement provides it with offset rights that discharge this burden. The Court agrees.

The Franchise Agreement between Pizza Hut and Lundy Enterprises provided Pizza Hut with the following offset rights: "At any time that Franchisee or its Related Persons are 30 days or more delinquent in paying any sums owed to PHI or its Affiliates, PHI may offset any sums owing by PHI against moneys owed by Franchisee or its Related Persons." Although the Lundy Parties do not dispute that Lundy Enterprises owed Pizza Hut funds, they argue that the ARFA cancelled the Franchise Agreement, and thus, Pizza Hut no longer has the set off rights provided by that agreement. But although the ARFA did terminate the Franchise Agreement, it granted the Lundy Parties a license to operate under the Pizza Hut

ORDER – PAGE 19

name.  ARFA provided: "[t]he terms of the License hereby granted *are identical to the terms of the Franchise Agreements*, including all guaranty obligations, except as expressly provided herein."  ARFA ¶ 4, *in* App. Supp. Pl.'s Resp. Def.'s Mot. Summ. J. 10 (emphasis added).  ARFA further provided that between November 6, 2010 and the time Pizza Hut acquired Lundy Enterprise's assets, or the Lundy Parties otherwise ceased operations, Lundy Enterprises needed to pay its monthly services fees and national advertising contributions. *Id.* ¶ 5b.  Pizza Hut offers evidence that, between November 6, 2010 and January 4, 2011, Lundy incurred a debt $324,926.42.[6]  If this is true, Pizza Hut would be entitled to offset this debt against the $200,000 it owed pursuant to the Ambassador Agreement.[7]

The Lundy Parties dispute this conclusion, arguing that Marilyn and Larry Lundy are the signatories to the Ambassador Agreement, while Lundy Enterprises is the signatory to the Franchise Agreement and to the ARFA.  However, the offset rights in the Franchise Agreement, rights that remained in the ARFA, speak to debts owed by the "Franchisee or its Related Persons."  Franchise Agreement ¶ 9.4, *in* App. Supp. Pl.'s Resp. Def.'s Mot. Summ. J. 44. "Related Persons" are defined as "all Persons have an Interest in Franchisee; all of Franchisee's Affiliates; the officers, directors, partners, trustees, and beneficiaries of Franchisee and of any Persons having an Interest in Franchisee; and the spouses and minor

---

[6]It is not clear from the record why Pizza Hut chose January 4, 2011 as the date by which to calculate this sum.  Elsewhere, Pizza Hut contends that it terminated the Franchise Agreement, ARFA, and Asset Purchase Agreement by January 2, 2011.

[7]The Court notes that it is possible that Pizza Hut might owe more than this offset under the Ambassador Agreement, but that Pizza Hut raised a material fact issue regarding the Lundy Parties' breach of that agreement.

children of any of the foregoing individuals." *Id.* ¶ 1.20.  Under this definition, Larry and Marilyn Lundy are both "Related Persons" of Lundy Enterprises.  And although the Court recognizes that the provision fails to state to whom the "any sums owing by PHI" are owed, the Court holds that this contractual provision entitles Pizza Hut to an offset against the money it owes Marilyn and Larry Lundy.  By contracting that Pizza Hut could offset any sums owed *by* Lundy Enterprises or Related Parties, the parties also contemplated that the "sums owing by PHI" could be either sums owed to Lundy Enterprises or to Lundy Enterprise's Related Parties.[8]  Accordingly, because Pizza Hut raises material fact issues regarding Larry and Marilyn Lundy's breach of the Ambassador Agreement, and Pizza Hut also raises a fact issue that Lundy Enterprise's debts were higher than the amount Pizza Hut indisputably owes, the Lundy Parties are not entitled to summary judgment on Count III of their amended counterclaim.

## V.  THE COURT DENIES PIZZA HUT'S MOTION TO STRIKE

On December 17-18, the Parties conducted an arbitration proceeding.  The arbitrators found as follows: "The fair market value of the assets of Lundy Enterprises as a going concern including allowing customary valuation of future growth opportunities including such line extensions as Wing Street and future units and development opportunities within the region as per the franchise agreements and [Pizza Hut] documents is: $7,742,550."

---

[8]The Court also notes that the Ambassador Agreement was specifically contemplated by the Settlement Agreement, an agreement entered into by Pizza Hut, Lundy Enterprises, *and* Marilyn and Larry Lundy, individually.  This further indicates the relation between the agreements, and guides the Court's conclusion that "sums owed by PHI" are those sums owed to either Lundy Enterprises, or to Larry and Marilyn Lundy individually.

Pizza Hut seeks to exclude the testimony of the Lundy Parties' expert, Citrin Cooperman, who the Lundy Parties designated to testify as to the market value of Lundy Enterprises as of December 31, 2010 – two days before Pizza Hut terminated the Asset Purchase Agreement and ARFA. Pizza Hut argues that Cooperman's testimony seeks to impermissibly relitigate the arbitration award. Because the value of the Lundy Enterprises is not "a fact in issue," Pizza Hut claims, Cooperman's testimony is irrelevant.

Pizza Hut argues that the value of Lundy Enterprises as of December 2010 is not a "a fact in issue" because of the doctrine of collateral estoppel. That doctrine precludes a party from litigating an issue already raised in an earlier action between the same parties if: (1) the issue under consideration is identical to the issue previously litigated; (2) the issue was actually litigated in the prior proceeding; and (3) the previous determination of the issue was necessary for the judgment in that proceeding.[9] *Tremont v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 821 (S.D. Tex. 2010) (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004)). The doctrine applies to arbitration awards. *Id.* District courts have broad discretion to determine the applicability of the doctrine. *See Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1423 (5th Cir. 1995).

---

[9]Where the plaintiff seeks the use of "offensive (non-mutual) collateral estoppel," a fourth requirement exists: "[t]here must be no special circumstance that would render [estoppel] inappropriate or unfair." *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013). However, Pizza Hut does not seek to use collateral estoppel offensively. *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 n.12 (5th Cir. 1995) ("This case involves traditional, or mutual estoppel because the relevant parties in the conspiracy case were the same as the parties in the dischargeability proceeding.")

Exercising that discretion, the Court declines to apply the doctrine. The Court reaches this decision for two reasons. First, although the text of the arbitration award indicates that the arbitration panel determined the fair market value of Lundy Enterprises, the award was for a specific purpose – to determine Pizza Hut's purchase price – and not necessarily to bind the parties in future litigation. *Cf. In re Terrace Gardens Park P'ship*, 96 B.R. 707, 710 (Bankr. W.D. Tex. 1989) ("But it is sheer arrogance for any bankruptcy court to maintain that it can, in the space of a few hours of hearing testimony, actually *set* values with binding collateral estoppel or res judicata effects.") (emphasis in original). Second, there is no indication that the valuation meets the third prong of the collateral estoppel test – that the issue was "necessary for judgment" – because there is no indication that the arbitrators actually awarded a judgment. The arbitrators found the fair market value of Lundy Enterprises as of December 18, 2010 and nothing more. Although the award itself indicated that it was the fair market value of Lundy Enterprises assets, the award's only contemplated application was as the price term in the APA. Thus, the arbitrators did not find that Pizza Hut actually owed Lundy Enterprises that value or make any other determination regarding the parties' respective liabilities. Thus, the valuation issue was not necessary for the judgment because there was no judgment.

In a footnote, Pizza Hut also asks the Court to exclude Cooperman's testimony because Cooperman's report does not include "a statement of the compensation to be paid for the study and testimony in the case." *See* FED. R. CIV. P. 26(a)(2)(B)(vi). But the report states that Citrin's compensation is "not contingent of any action or event resulting from the

analyses, opinions, or conclusions in, or the use of, this report."  App. Supp. Pl.'s Mot. Exclude 205.  Though lacking in specificity, this is a statement of the compensation to be paid.    Further, the Lundy Parties indicate that information regarding Cooperman's compensation will be easily obtained through discovery.  *See Jones v. United States*, No. 1:09-CV-161-RLY-MJD, 2011 WL 63894, at * 1 (S.D. Ind. Jan. 7, 2011) (declining to exclude deficient expert report where plaintiff acquired compensation information through other means).  Accordingly, the Court denies Pizza Hut's motion to exclude.

CONCLUSION

For the reasons stated above, the Court grants Pizza Hut's motion for summary judgment in part, and denies it in part, denies the Lundy Parties' motion for summary judgment, and denies Pizza Hut's motion to exclude.  Count I the Lundy Parties' First Amended Counterclaims remains pending for trial to the extent the claim arises from breach of the confidentiality provision of the Settlement Agreement, the nondisparagement provision of the Settlement Agreement, or the commercially reasonable efforts provisions of the Settlement Agreement and APA.  Count II of the Lundy Parties' First Amended counterclaim remains pending for trial to the extend it arises out of breach of the commercially reasonable efforts provision of the Settlement Agreement.  Count III of the Lundy Parties' First Amended Counterclaim also remains pending.

ORDER – PAGE 24

Signed June 11, 2013.

_____
David C. Godbey
United States District Judge